1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

CHARLES AALMO,

9
                              Plaintiff,

10
         v.

11
LINDA JOHNSON, AMBER WILSON,
LEWIS COUNTY, and DR. TERRY
WILSON,

12

13
                              Defendants.

CASE NO. 14-cv-5683-RJB-JRC

REPORT AND RECOMMENDATION

NOTED FOR: July 24, 2015

14

15         The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

16 Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local

   Magistrate Judge Rules MJR1, MJR3 and MJR4.

17
           Before the Court is defendants' Motion for Summary Judgment (*see* Dkt. 23). Plaintiff
18
   has not filed a response to defendant's Motion for Summary Judgment.
19
           Plaintiff failed to respond to defendants' motion for summary judgment.  Therefore,
20
   defendants' motion should be granted because plaintiff has failed to meet his burden of proof.
21
   Also, for the reasons discussed below, the Court concludes that even viewing the facts and
22
   evidence in favor of plaintiff, he cannot demonstrate that any of the defendants acted with
23
   deliberate indifference to a serious medical need. Plaintiff regularly was receiving medical
24

1  attention as well as ibuprofen for his pain. Therefore, Defendant's Motion for Summary

2  Judgment should be granted in full.

3  **FACTS**

4       Plaintiff alleges that he has suffered from pain in his back as well as dental pain in his

5  mouth (*see* Amended Complaint, Dkt. 9). Plaintiff's allegations are somewhat unclear and

6  sometimes contradictory. In addition, plaintiff alleges that he was denied medical treatment on

7  occasions when he was seen by an (unspecified) medical doctor (*see, e.g.*, p. 7 (alleging that he

8  was "refused [] [] medical treatment" on 09/18/2015, even though on that day "they finally let

9  me see a doctor," presumably alleging as such because he was "refused my muscle relaxers").

10  Therefore, it appears that when plaintiff alleges a lack of medical treatment, he instead, has an

11  issue with the particular medical treatment he was receiving (*see id.*).

12       Plaintiff complains that on August 19, 2014 he was denied ibuprofen and antibiotics in

13  the morning and denied ibuprofen in the afternoon by unspecified defendants (*see id.* at p. 5).

14  Plaintiff alleges that he was refused access to a medical provider (*see id.*).

15       Plaintiff alleges that on August 31, 2014, he made Sgt. Amber Wilson aware of "a serious

16  medical condition" (*see id.* at p. 3). Plaintiff contends that he was throwing up, sweating, and in

17  severe pain, although he does not specify what area of the body was in pain (*see id.*). He

18  complains that Sgt. Wilson "failed to monitor or respond to my medical emergency" (*see id.*).

19  Plaintiff contends that he had been requesting to see a medical provider for a week as of

20  September 4, 2014, but that his request was denied and also that he was no longer getting

21  ibuprofen or pain medication at this time (*see id.* at p. 5). Plaintiff's allegation regarding no

22  longer receiving ibuprofen on September 4, 2014 is contradicted by his allegations on the same

23  page that the ibuprofen was no longer working (*see id.*). Plaintiff acknowledges that medical

24

staff responded to his complaints of a medical emergency and took his vitals on September 6, 2014 (*see id.* at p. 6). Plaintiff indicates that on September 11, 2014 he had been lying in his cell in severe pain and that "they justifie[d] this by giving me antibiotics and ibuprofen they know is not working" (*see id*. at p. 5). Plaintiff indicates that he also hit his emergency button on September 11, 2014, regarding the pain he experienced when his stitches came out and because of the bleeding in his mouth (*see id.* at pp. 3, 5). Plaintiff complains that his request to see medical was ignored by Sgt. Wilson even though he had been waiting for 6 ½ hours to see medical (*see id.* at p. 3). Plaintiff contends that he was not seen for his pain in his mouth for nine hours and that when "she" did come to see him, she only gave him ibuprofen (*see id.* at pp. 5, 6). Plaintiff does not specify who "she" is, and contends generally that "they" failed to respond to his medical emergency (*see id.*).

Plaintiff alleges denial of his eighth amendment right to adequate medical care because he did not see a dentist until September 11, 2014 even though he had dental pain for approximately a month (*see id*. at p. 5). Plaintiff also complains about his treatment from Linda Johnson on September 12, 2014 because allegedly his mouth would not stop bleeding and ibuprofen was not helping his pain (*see id*.). Plaintiff alleges that Dr. Terry Wilson was failing to give him proper medication or medical treatment because he was in severe pain and his mouth was bleeding and he "thought [he] was gonna have a heart attack," but he was only given ibuprofen (*see id.* at pp. 6-7).  Plaintiff alleges that he tried to see Linda Johnson on the 13th 14th 15th and 16th of November for medical treatment however he was unsuccessful in his attempt to get pain medication and a muscle relaxer at that time (*see id*.). He complains that unspecified defendants denied that plaintiff had an infection even though his face was swollen (*see id*.). He contends that his attempt to see a dentist was delayed and that a week later the dentist found an

1    infection (*see id.*). Plaintiff complains that he had to endure an infection and pain for a week

2    longer than he should have (*see id.*).  He contends that "Dr. Terry Wilson [] was aware of all of

3    this" (*see id.* at p. 5).

4           Plaintiff notes that he saw a doctor (unspecified) on September 18, 2014 and contends

5    that the doctor "would not prescribe pain medication that would help [and] that I needed to 'suck

6    it up' is what he said and refused my muscle relaxers for my back and leg injury and refused to

7    give medical treatment" (*see id.* at p. 7). Plaintiff complains because the doctor "said there was

8    no infection in my mouth which there was" (*see id.*). Plaintiff similarly complains about his

9    treatment on September 19, 2014 because the (unspecified) nurse "said there was no sign of

10   infection even though my whole face was severely swollen" (*see id.*).

11          Plaintiff argues generally that Dr. Terry Wilson "failed to prescribe adequate pain

12   medication, failed to give medical/dental treatment, [and failed to] provide medical/dental

13   treatment in a timely fashion" (*see id.* at p. 8). Plaintiff alleges that he "was in severe pain and

14   thought [his] back was broke," but Dr. Wilson denied his request for x-rays, indicating that

15   plaintiff would know if his back was broken (*see id.*). Plaintiff acknowledges that Dr. Wilson

16   prescribed a 10 day prescription of muscle relaxers but complains because Dr. Wilson would not

17   see him after three days (*see id.*). Plaintiff complains about the treatment he received from Dr.

18   Wilson because Dr. Wilson opined that plaintiff did not need muscle relaxers or more powerful

19   pain medication (*see id.*). Plaintiff also complains that Dr. Wilson failed to provide "proper

20   medication" for plaintiff's pain "even after I got dry socket which caused so severe pain I

21   thought I would die" (*see id.*). Plaintiff also complains because even though plaintiff told Dr.

22   Wilson that his teeth were infected, Dr. Wilson said they were not infected (*see id.*). Plaintiff

23   contends that his face became swollen the next day (*see id.*).

24

REPORT AND RECOMMENDATION - 4

1    In their motion for summary judgment, defendants provide a much more detailed and

2  specific timeline of events that is supported by declarations and is supported by the record (*see*

3  Dkt. 30). Plaintiff fails to refute the facts and opinions provided by defendants as he did not file a

4  response to defendant's motion for summary judgment and did not file any declarations.

5    On August 13, 2014, plaintiff filed a kite requesting Tylenol for his teeth (*see* Dkt. 34,

6  Atkins Declaration, Exhibit 3, p. 38). An official responded within an hour and informed him

7  that he would be seen by a medical professional (*see id.*). Plaintiff responded on the next day

8  indicating that he would like to be seen by a medical professional (*see id.* at p. 39).

9    Plaintiff was seen by a registered nurse the next day regarding plaintiff's complaints of

10  dental pain in the left lower molar and a foul tasting drainage for two days (*see* Dkt. 34, Atkins

11  Declaration, Exhibit 2, p. 25). The nurse prescribed antibiotics and ibuprofen (*see id.*). Mr.

12  Wilson and Dr. Fleck both opine that ibuprofen typically is effective at treating pain and

13  inflammation associated with dental complaints (*see* Dkt. 31, Declaration of Ronald W. Fleck,

14  M.D., pp. 3-4; Dkt. 33, Declaration of Terry Wilson, p. 3).

15    On August 19, 2014, when plaintiff complained about not receiving his antibiotics or

16  ibuprofen on that day, and complained about his teeth and leg, an official sent a response "back

17  to plaintiff within an hour informing him that he was not in his room when the medications were

18  brought around, and inquiring as to what was wrong with his leg" (Dkt. 30, p. 3 (*citing* Dkt. 34-

19  3)). Defendants note that plaintiff "never responded to the inquiry regarding his leg complaints"

20  (*id.*).

21    Nurse Johnson saw plaintiff the next day, August 20, 2014, at which point plaintiff

22  complained of dental and back pain (*see* Dkt. 34, p. 24). Plaintiff's medical record indicates that

23  plaintiff informed Nurse Johnson that he had been seeing a dentist before he was sent to jail, but

24

1 plaintiff refused to sign a request for release of information (*id.* at pp. 23-24; *see also* Declaration

2 of Linda Johnson, Dkt. 32, ¶ 6). Plaintiff stated at that appointment that he planned on getting out

3 of jail early because of his dental problems (*see id.*; *see also* Dkt. 32, Declaration of Linda

4 Johnson, ¶ 4). This record also indicates that although plaintiff claimed that he fell from a roof

5 on the day of his arrest, plaintiff did not state this on the intake form when he was brought into

6 jail (*see* Dkt. 34, at p. 23; Dkt. 32, Declaration of Linda Johnson, ¶ 4). Plaintiff agreed to see a

7 medical provider the next day (*see* Dkt. 34, at p. 23; Dkt. 32, ¶ 4). The record reflects that a

8 medical provider examined plaintiff the following day and prescribed ibuprofen, a muscle

9 relaxer (Robaxin), and an extra mattress (*see* Dkt. 34-2, at p. 22).

10       Regarding plaintiff's dental pain, a jail nurse attempted to call the jail dentist, Dr. Randy

11 Lindbald , D.D.S., but was informed that he had retired (Dkt. 32, Declaration of Linda Johnson, ¶

12 7). Therefore, Nurse Johnson "contacted the dentist who took over for Dr. Lindbald, but was

13 informed he would not treat inmates" (*see id.*). Nurse Johnson indicates in her declaration that

14 she "made multiple calls to other dentists in the area in order to locate one who would agree to

15 treat [plaintiff]" (*see id.*). Nurse Johnson indicates that she believes that she "called between

16 seven and ten dentists' offices and left messages explaining who [she] was and inquiring as to

17 whether the dentist would treat an inmate and what the cost would be" (*see id.*).

18       Mr. Terry Wilson, P.A., indicates in his declaration that he assessed and examined

19 plaintiff on August 21, 2014 and conducted an oral examination (*see* Dkt. 33, ¶ 7). Plaintiff had

20 multiple cavities (Dkt. 34-2, p. 23). However, Mr. Wilson indicates that his oral examination on

21 August 21, 2014 revealed "no signs or symptoms of pus, drainage, bleeding, swelling, or any

22 other visible signs or symptoms of pain" (*see* Dkt. 33, ¶ 7). Therefore, because of this

23 examination result, as well as his oral examination result from August 28, and the results

24

following oral examinations by nursing providers on August 15, 29, and September 2, Mr.

Wilson concluded that plaintiff's "subjective dental complaints were not a serious medical

condition or a dental emergency" (*see id*. at ¶¶ 7-8). Mr. Wilson "determined that the treatment

[plaintiff] was receiving at the jail, which included antibiotics and ibuprofen, [was] both

appropriate and adequate" (*see id.* at ¶ 8).

Plaintiff sent appeals on August 21 and August 22, 2014, complaining about not seeing a

dentist and not getting additional pain medication (*see* Dkt. 30, p. 5 (*citing* Dkt. 34-4)). On

August 23, 2014, plaintiff sent in a request for medical assistance, alleging that the ibuprofen

was not working on his teeth and that the muscle relaxant was not working well for his back (*see

id.* (*citing* Dkt. 34-3)). A jail official sent a response indicating that plaintiff was being put on the

list to see a medical provider (*see id.*). Two responses also were sent to plaintiff on August 25,

2014, informing him that he would see a medical provider and "that he needed to sign a medical

release so the jail could obtain his prior record so that he could obtain appropriate treatment" (*see

id.*). On August 25, 2014, plaintiff sent a request claiming that "his prior dentist would not have

any records of the care provided because plaintiff was having an extramarital affair with her"

(*see id.* (*citing* Dkt. 34-3); *see also* Dkt. 34-3, pp. 41-42). Plaintiff also claimed that the jail was

not sending him to a dentist as retaliation for not signing the release of information form, but

responses "were sent to plaintiff on August 25, 2014 and August 27, 2014, informing plaintiff

that his chart was going to be reviewed by a medical provider; plaintiff had been told numerous

times a new dental provider was being located; and no retaliatory action was being taken against

him" (*see id.* (*citing* Dkt. 34-3)).

On August 28, 2014, Mr. Wilson again conducted an oral examination for plaintiff (*see

Dkt. 34-2, p. 21). Mr. Wilson indicated in plaintiff's medical report that plaintiff had cavities, but

1   had no acute signs of an abscess (*see id.*). Mr. Wilson indicates in his declaration that his oral

2   examination on August 28, 2014 revealed "no signs or symptoms of pus, drainage, bleeding,

3   swelling, or any other visible signs or symptoms of pain" (*see* Dkt. 33, ¶ 7). Plaintiff's medical

4   progress notes document that Mr. Wilson explained to plaintiff that plaintiff was not having a

5   dental emergency and did not need to see a dentist at that time (Dkt. 34-2, p. 20).

6       Later that day, on August 28, 2014, plaintiff sent a request asking for the name of the

7   nurse who was with Mr. Wilson during the oral examination, claiming that the nurse did not look

8   in his mouth, but stated that his dental issue was not life threatening (*see* Dkt. 30, p. 6). Nurse

9   Johnson responded the same day that "the medical providers had informed her that plaintiff did

10  not have evidence of a dental abscess, and that she was in the process of finding a dentist who

11  would examine plaintiff" (*see id.* (*citing* Dkt. 34-3)).

12      On August 29, 2014, plaintiff sent a request to be seen, complaining about his dental pain

13  and about waking up in a sweat in the middle of the night (*see id.*). Nurse Johnson saw plaintiff

14  later that day and a nursing provider conducted an oral examination, noting that no pus pockets

15  were visualized and that there was no sign of facial swelling (*see id.* (*citing* Dkt. 34-2, p. 20, Dkt.

16  32, ¶ 5)). However, because plaintiff continued to complain of dental pain, he was started on a

17  different antibiotic and ibuprofen was continued (*see id.* (*citing* Dkt. 34-2, p. 20)).

18      On August 31, 2014, plaintiff sent a request complaining that his recent prescription of

19  antibiotics was not working (*see id.* at p. 7 (*citing* Dkt. 34-3)). The jail official responded on the

20  same day informing plaintiff that as this antibiotic was just prescribed two days prior, plaintiff

21  needed to give it time to work (*see id.* (*citing* Dkt. 34-3)). Although a nurse explained to plaintiff

22  on September 2, 2014 that he was not suffering from a dental emergency as he did not exhibit

23

24

any signs or symptoms of pus, drainage, facial swelling, or any other signs or symptoms of an

abscess, plaintiff continued to request to have his tooth pulled (*see id.* (*citing* Dkt. 34-2, at p. 2)).

Although Mr. Wilson did not believe it was medically necessary, because plaintiff was

insistent, the Jail Chief became involved and approved plaintiff's request (*see id.*, at p. 7).

However, because the treatment was not deemed medically necessary, plaintiff was required to

pay for this treatment himself (*see id.*). Nurse Johnson found two dentists who were willing to

treat plaintiff, and provided this information to plaintiff and his family (*see* Dkt. 32, ¶ 8).

Because plaintiff was required to pay for this treatment, Nurse Johnson continued to seek

alternatives for plaintiff and found a dentist serving low income patients who would see plaintiff

(*see id.*, at ¶ 9).

Hence, on September 4, 2014, plaintiff was referred to outside dentist, Dr. Lawrence Li,

D.D.S. who "did not prescribe any additional medications or schedule any dental work for

another week" (*see* Dkt. 33, at ¶ 9). Plaintiff was scheduled an appointment a week later, on

September 11, 2014, in order to get two teeth extracted (Dkt. 30, pp. 7-8 (*citing* Dkt. 34-2)).

Although plaintiff's prescriptions for antibiotics and ibuprofen were continued by Nurse Johnson

(*see* Dkt. 34-2, p. 19), plaintiff sent a request that same day "threatening the medical providers at

the jail that unless he was given narcotic pain medication for when his teeth were extracted, he

would bring a civil rights lawsuit" (*see id.* at p. 8 (*citing* Dkt. 34-3)). On the next day, September

5, 2014, plaintiff again sent a request regarding narcotic pain medication (*see id.*).

In response to plaintiff's requests, medical providers at the jail called Dr. Li's office to

obtain a clarification of the dental orders (*see id.* (Dkt. 34-2)). The dentist informed them that

plaintiff should finish the course of antibiotics that the jail had prescribed and no additional

medications were indicated (*see id.* (*citing* Dkt. 34-2, p. 17)).

1    On September 8, 2014, plaintiff sent an appeal demanding narcotic pain medication (*see*

2    *id.* (*citing* Dkt. 34-4)). The next day, the jail official sent a response stating that plaintiff already

3    was receiving medication for his pain (*see id.*).

4    On September 11, 2014, plaintiff had two teeth extracted by Dr. Li (*see id.*, at p. 9 (*citing*

5    Dkt. 34-2, p. 17)). Although plaintiff was ordered to be on a soft diet for three days, plaintiff

6    refused the soft diet stating that he could chew his food (*see id.* (*citing* Dkt. 34-3, Dkt. 31, ¶ 12)).

7    On September 12, 2014, medical providers from the jail again called the dentist's office to

8    confirm that the dentist had not written an additional prescription for plaintiff (*see id.* (*citing* 34-

9    2, p. 17)). Dr. Li's office confirmed that no additional medication was prescribed (*see id.*).

10   On September 13, 2014, plaintiff sent two requests asking for ibuprofen and complaining

11   of bleeding in his mouth (*see id.*). A jail official sent a response that same day indicating that

12   ibuprofen was being brought to him and that he could get more gauze for the bleeding (*see id.*

13   (*citing* Dkt. 34-3)).

14   On September 14, 2014, plaintiff sent a request again for ibuprofen, alleging that he was

15   waking up in the middle of the night with pain (*see id.* (*citing* Dkt. 34-3)). A jail official sent a

16   response explaining that medicine is not administered in the middle of the night; that Dr. Li had

17   not prescribed additional medication; that plaintiff recently had seen Nurse Johnson two days

18   prior; and that plaintiff's request was being forwarded to medical (*see id.* (*citing* Dkt. 34-3)). On

19   September 16, 2014, plaintiff sent another request asking for ibuprofen in the middle of the night

20   (*see id.* at p. 10 (*citing* Dkt. 34-3)). A jail official sent a response on that same day, indicating

21   that medications only were administered three times a day, not in the middle of the night, and

22   that plaintiff had the option to purchase ibuprofen to keep in his room (*see id.* (*citing* Dkt. 34-3)).

23

24

1          On September 17, 2014, plaintiff sent a request indicating that he had an abscess pop on a

2    tooth (*see id.* (*citing* Dkt. 34-3)). This request was sent to medical, and on the next day,

3    September 18, 2014, Mr. Wilson examined plaintiff for this complaint and for complaints of

4    back pain (*see id.*). At that time, plaintiff's ibuprofen was discontinued and he was started on

5    Naprosyn (*see* Dkt. 34-2, p. 15). Plaintiff's medical progress notes for this date indicate that

6    plaintiff has a "manipulative personality" (*see id.*). They also indicate that a follow-up

7    appointment for plaintiff was made for September 25, 2014 with Dr. Li's office (*see id.*).

8          On September 19, 2014, plaintiff sent a request claiming that the medical providers had

9    missed an abscess in his mouth and expressing his dissatisfaction with the medical treatment he

10   had been receiving for his back (*see* Dkt. 30, p. 10 (*citing* Dkt. 34-3)). Sgt. Wilson responded

11   stating that she had reviewed the medical record and found that plaintiff was receiving the

12   medical treatment as ordered (*see id.* (*citing* Dkt. 34-3)). Nurse Johnson saw plaintiff later that

13   day regarding his complaints of an abscess (*see id.* (*citing* Dkt. 34-2)). Plaintiff's medical

14   progress notes for that date indicate that there was "no evidence of stitches at this time;" that "no

15   facial swelling observed, no pus visualized in mouth [and] no apparent distress at this time" (*see*

16   Dkt. 34-2, p. 14). On that same day, plaintiff sent an appeal alleging that he had not been given

17   timely medical treatment and had been ignored for a week, however defendants point out that

18   this allegation "is clearly contradicted and not supported by the actual medical record which

19   shows plaintiff had been seen by medical providers at three different times during the preceding

20   week" (*see* Dkt. 30, p. 11 (*citing* Dkt. 34-2)). Plaintiff's medical progress notes appear to support

21   defendants' assertion that plaintiff was seen three times in medical between September 12 and

22   September 19, 2014 (*see* Dkt. 34-2, pp. 14-16).

23

24

REPORT AND RECOMMENDATION - 11

1                                **STANDARD OF REVIEW**

2        Summary judgment is appropriate if "the pleadings, the discovery and disclosure

3 materials on file, and any affidavits, show that there is no genuine dispute as to any material fact

4 and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a

5 genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to

6 find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see*

7 *also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.

8 1987). When presented with a motion for summary judgment, the court shall review the

9 pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S.

10 at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory,

11 nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing

12 facts." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). However, "a pro se

13 complaint will be liberally construed  . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.

14 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

15        In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

16 conduct complained of was committed by a person acting under color of state law and that (2)

17 the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

18 laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

19 *grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

20                                    **DISCUSSION**

21        As an initial matter, the Court notes that defendants sent plaintiff a *Rand* notice on May

22 1, 2015 (*see* Rand Notice, Dkt. 35). Defendants sent this notice by First Class Mail to the

23 updated address that plaintiff provided to the Court on January 16, 2015 (*see id.*; *see also* Notice

24

1    of Change of Address, Dkt. 26). This Rand Notice sent by defendants informed plaintiff that

2    defendants had filed a joint motion for summary judgment; that if the motion was granted it

3    would end plaintiff's case; that if there is no genuine issue of material fact summary judgment

4    must be granted, which would end plaintiff's case; that plaintiff could not rely on what is in his

5    complaint, but that instead plaintiff needed to "set out specific facts in declarations, depositions,

6    answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict

7    the facts shown in the defendant's declarations and documents and show that there is a genuine

8    issue of material fact for trial;" that if plaintiff failed to submit his own evidence in opposition,

9    summary judgment may be entered against him; and, if summary judgment is granted, that

10   plaintiff's "case will be dismissed and there will be no trial" (*see* Dkt. 35, pp. 1-2). Despite this

11   notice, plaintiff failed to respond to defendants' motion for summary judgment in any way.

12   Although the Court still must determine whether or not summary judgment is appropriate, this

13   failure by plaintiff to respond to defendants' motion for summary judgment provides the Court

14   with no reason to deny defendants' motion. For the reasons discussed below, the Court concludes

15   that summary judgment is appropriate with respect to plaintiff's complaint.

16         The Eighth Amendment prohibits deliberate indifference to a person's serious medical

17   needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jones v. Johnson*, 791 F.2d 769, 771 (9th

18   Cir. 1986).  The government has an obligation to provide medical care for prisoners, and the

19   Eighth Amendment proscribes deliberate indifference to their serious medical needs.  *Estelle*,

20   *supra,* 429 U.S. at 103 (1976).  Such conduct is actionable under 42 U.S.C. § 1983.  *See, e.g*.,

21   *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds, WMX*

22   *Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). According to the Ninth

23   Circuit, prison officials "'are indifferent to prisoners' serious medical needs when they deny,

24

1    delay, or intentionally interfere with medical treatment.'" *Jackson v. McIntosh*, 90 F.3d 330, 332

2    (9th Cir. 1996) (*quoting Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)).

3           To establish deliberate indifference, a prisoner must show that a defendant purposefully

4    ignored or failed to respond to the prisoner's pain or possible medical need. *See McGuckin*,

5    *supra,* 974 F.2d at 1060; *Estelle*, *supra,* 429 U.S. at 104.  A determination of deliberate

6    indifference involves an examination of two elements: (1) the seriousness of the prisoner's

7    medical need; and (2) the nature of defendant's response to that need.  *See McGuckin*, *supra,* 974

8    F.2d at 1059.  A serious medical need exists if the failure to treat a prisoner's condition could

9    result in further significant injury or the unnecessary and wanton infliction of pain.  *Id.*

10          In order to establish deliberate indifference, there must first be a purposeful act or failure

11    to act on the part of the defendant. *Id.* at 1060. A difference of opinion between a prisoner and

12    medical authorities regarding proper medical treatment does not give rise to a §1983 claim.

13    *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Mere negligence in

14    diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

15    Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). According to

16    the Supreme Court, an official can be found liable pursuant to the Eighth Amendment if "the

17    official knows of and disregards an excessive risk to inmate health or safety  .  .  .  ." *Farmer v.*

18    *Brennan*, 511 U.S. 825, 837 (1994).

19          First, defendants persuasively argue that plaintiff cannot demonstrate that he suffered

20    from a serious medical condition, noting that the Eight Circuit has dismissed a case where a

21    plaintiff "did not see a dentist for approximately eight months after first making complaints" (*see*

22    Dkt. 30, pp. 14-15 (*citing Holden v. Hirner,* 663 F.3d 336 (8th Cir. 2011)). As noted previously,

23    plaintiff offers no response to defendants' assertion.

24

REPORT AND RECOMMENDATION - 14

1    The Court notes that in support of their motion for summary judgment, defendants have

2 submitted the declarations of Mr. Terry Wilson, P.A. and Dr. Ronald W. Fleck, M.D. (*see* Dkt.

3 31, 33). Both Mr. Wilson and Dr. Fleck opine that plaintiff did not have a serious medical

4 condition. For example, after reviewing plaintiff's file, Dr. Fleck noted that plaintiff was given

5 an oral examination on August 15, 21, 28, 29, and September 2 and that "none of these exams

6 showed evidence of bleeding, swelling, pus, drainage or other visible signs or symptoms that

7 would rise to the level of constituting a serious medical condition" (Dkt. 31, ¶¶ 3, 5). Defendants

8 note that plaintiff "was seen by medical providers at the jail seven times in between when he first

9 complained of dental pain until he was seen by an outside dentist approximately three weeks

10 later" (*see* Dkt. 30, p. 15). In addition, Dr. Fleck notes that when "plaintiff was seen by the

11 outside dentist, plaintiff did not immediately undergo any dental work or extractions, but rather

12 the dentist scheduled the dental work for a week later" (*see* Dkt. 31, at ¶ 6). Dr. Fleck opines that

13 if plaintiff had "a serious medical condition that posed a substantial risk to plaintiff's health, the

14 dentist more likely than not would not have delayed dental work for week, but would [have]

15 done something the first day he saw plaintiff" (*see id.*).

16    Similarly, Mr. Wilson in his declaration indicates that he "personally assessed and

17 examined [plaintiff] on August 21 and August 28, 2014 [and] . . . . conducted oral

18 examinations on both days (*see* Dkt. 33, ¶ 7). He indicates that there were "no signs or symptoms

19 of pus, drainage, bleeding, swelling, or any other visible signs or symptoms of pain" (*see id.*). He

20 further indicates that none of the examinations conducted by nursing providers on August 15, 29,

21 or September 2 "revealed any outward signs or symptoms of the dental abscess or any other

22 condition" (*see id.*). Mr. Wilson opines that plaintiff's "subjective dental complaints were not a

23 serious medical condition or a dental emergency" (*see id.* at ¶ 8). He opines that antibiotics and

24

1   ibuprofen were an adequate and appropriate response (*see id.*). The Court also notes defendants'

2   argument that when plaintiff "had his teeth extracted, he declined a soft diet, undermining the

3   [alleged] severity of his pain and indicating he was able to chew his food  .  .  .  ." (Dkt. 30, p. 16

4   (*citing* Dkt. 34-2, Dkt. 31) (other citation omitted)).

5        Regarding plaintiff's August 17, 2014 complaints of restless legs and back pain,

6   defendants note that plaintiff was seen that day by medical staff (*see* Dkt. 30, p. 3). As noted by

7   defendants, the record reflects that "earlier that day plaintiff ambulated without difficulty and

8   without complaints of back pain when he got his medication" (*see id.* (*citing* Dkt. 34-2); *see also*

9   Dkt. 34-2, p. 24). In addition, plaintiff was provided with a prescription for a muscle relaxant and

10  an extra mattress on August 21, 2014 (*see* Dkt. 34-2, at p. 22). Plaintiff does not provide any

11  opinion from a doctor or medical expert that this treatment was inappropriate or that any other

12  treatment was medically indicated.

13       Even if the Court concludes for the purposes of defendants' motion for summary

14  judgment that plaintiff had a serious medical need, the Court must inquire as to the nature of

15  defendants' response to that need. *See McGuckin*, *supra,* 974 F.2d at 1059. A review of the facts,

16  discussed in detail above, demonstrates that defendants have not ignored or failed to respond to

17  plaintiff's pain or possible medical need. *See McGuckin*, *supra,* 974 F.2d at 1060; *Estelle*, *supra,*

18  429 U.S. at 104. Instead, as noted above, plaintiff regularly was seen by various medical

19  providers during the time of his complaints and was prescribed ibuprofen, as well as being

20  prescribed a muscle relaxer for a period of time. For example, the nurse saw plaintiff on August

21  15, 2014, the day after he filed his kite about dental pain, and prescribed antibiotics and

22  ibuprofen for plaintiff when she saw him (*see, e.g.,* Atkins Declaration, Exhibit 2, p. 25). Mr.

23  Wilson and Dr. Fleck both opine that ibuprofen typically is effective at treating pain and

24

inflammation associated with dental complaints (*see* Dkt. 31, Declaration of Ronald W. Fleck, M.D., ¶¶ 9-10; Dkt. 33, Declaration of Terry Wilson, ¶ 8). Mr. Wilson specifically opines that antibiotics and ibuprofen were an adequate and appropriate response to plaintiff's complaints of pain, given the results of his oral examinations (*see* Dkt. 33, at ¶ 8). Similarly, Dr. Fleck provided his opinion that the jail protocol followed for plaintiff's care "was appropriate and met the standard of care" and also opines that the lack of narcotic medication was appropriate in this particular circumstance (*see* Dkt. 31, ¶¶ 9-10). Plaintiff has not responded to these opinions, and offers no declaration in opposition.

Giving plaintiff every benefit of the doubt, and construing his pleadings as liberally as possible, he has presented, at most, his own opinion that he should have been receiving additional or different treatment (*see* Amended Complaint, Dkt. 9). However, a difference of opinion between a prisoner and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

## CONCLUSION

Therefore, for the stated reasons, Defendants' Motion for Summary Judgment on plaintiff's Eighth Amendment claim should be granted in full.


Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

1   imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on July

2   24, 2015, as noted in the caption.

3          Dated this 2nd day of July, 2015.

4

5                                                    J. Richard Creatura
                                                     United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 18